INDIANA INSURANCE COMPANY *v.* AMERICAN UNDERWRITERS, INC.

[No. 1273S260. Filed December 26, 1973.]

*Daniel F. Kelly, Steven R. Crist, Tinkham, Beckman, Kelly & Singleton,* of Hammond, for plaintiff-appellant.

*James K. Whitaker,* of Hammond, *Marshall E. Williams,* of Indianapolis, for defendant-appellee.

HUNTER, J.—This cause arises upon petition to transfer and presents an issue of first impression for our determination. The controversy is between two insurance companies as to which is primarily liable for a tortfeasor's property damage. That is to say, when a tortfeasor comes within the coverage of two insurance policies, one policy providing an "escape" clause when there is other insurance against loss, and the other policy providing only "excess" coverage when there is other valid and collectible insurance, which policy will prevail? The instant facts are stipulated and may be briefly summarized.

On March 19, 1968, an automobile owned by Stanley Malocha and operated, with permission, by his brother, George Malocha, struck two other autos causing property damage to both of them. At the time of the accident, the Malocha automobile was insured by American and the policy contained the following provisions:

> " *'Persons Insured.* The following are assureds under the Liability Coverages:
>
> "(a)   with respect to an owned automobile,
>> "(1)   the named assured,
>> "(2)   any other person using said automobile to whom the named assured has given permission, provided the use is within the scope of such permission;'
>
> * * *
>
> " *'Other Insurance. If the insured has other insurance against loss to which the liability coverage applies, then this policy shall not in any way apply.* This policy provision shall apply to all automobiles whether owned, non-owned, temporary substitute, or otherwise. It is the intent of this provision to make this policy liability coverages contingent upon the non-existence of other insurance. See Part II for the Provision relating to other Collision or Comprehensive Insurance. This Provision does not apply to Coverage C-Medical Payments.' " (Emphasis added.)

The "other insurance" provision quoted above is commonly referred to as an "escape clause." The driver of the Malocha automobile, the tortfeasor, was insured by Indiana under an "excess coverage clause" as follows:

> " *'Persons Insured.* The following are insureds under Part I: * * * (b) with respect to a non-owned automobile,
>
> * * *
>
> " *'Other Insurance. If the insured has other insurance against a loss covered by Part I of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declaration bears to the total applicable limit of liability of all valid and collectible insurance against such loss;* provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile *shall be excess insurance over any other valid and collectible insurance.'* " (Emphasis added.)

The owners of the damaged vehicles sued the Malocha brothers demanding judgment against each of them in the amount of $700. American refused to defend the tortfeasor's interest on the ground that Indiana was the primary carrier. Indiana settled the property damage claim and subsequently initiated the instant action against American for recovery of the amount paid in settlement plus costs and attorneys' fees.

The trial court entered summary judgment in favor of the defendant, American, holding that the tortfeasor's insurer should be primarily liable. The Court of Appeals reversed, holding that the majority rule places primary liability on the *owner's* insurer and, further, the language of the Indiana escape clause was insufficient to shift liability to the *driver's* insurance carrier. Therefore, the court found American to be primarily liable.

The Court of Appeals correctly stated the majority rule— that is, all else being equal, primary liability falls on the owner's insurer rather than the operator's insurer. The Court went on to apply principles of construction to the policies at issue. The leading case in this body of authority, construing "other insurance" policy provisions, is *Zurich General Accident & Liability Ins. Co.* v. *Clamor*, (7th Cir., 1942), 124 F. 2d 717. The *Zurich* opinion discounted prior theories which had placed liability upon whichever insurer first assumed the risk of loss and adopted the rule that primary liability was to be dependent upon the language of the policies. Applying rules of construction, the federal court found that the owner's policy was more specific and thus the owner's insurer was deemed primarily liable. The decision eventually developed into what has become the so-called "majority view."

At the outset we should emphasize that this Court is not overly impressed with the contention advanced that we should adopt a rule merely because numerous other state courts have followed it. We do not sanction blind adherence to quantitative

analysis, but choose instead to apply close judicial scrutiny to existing law in order to obtain a qualitative result.

The original purposes for "other insurance" clauses were to prevent overinsurance and to protect carriers from an insured's self-injury temptation. The clauses had their origin in the field of property insurance and were generally met with approval. However, in the automobile field, where the hazard of self-injury is less likely to occur, the original purposes become less important:

> "It takes far less cunning to burn one's house or barn in order to collect in full from several insurers than it does to conspire with another that he purchase automobile liability and property damage insurance from several insurers and then collide with the first party in such a way as to do damage to both that party's car and person and thus effect a multiple recovery. The possibility of serious injury or death resulting from such conspiracies should prove a powerful deterrent."[1]

Another reason for treating automobile insurance provisions with less deference than other property insurance clauses is that automobile coverage is generally enlarged to encompass "other insureds."[2]

In the wake of the *Zurich* decision, *supra*, automobile insurance carriers have attempted to reduce their liability where concurrent coverage exists and, at the same time, expand their coverage in consonance with existing "omnibus statutes." The resultant confusion occurring where policy provisions conflict has been tremendous. As stated by the Iowa Supreme Court, when faced with the identical issue that is before us:

> "With regard to automobiles, three basic types of 'other insurance' approaches have developed. (1) a prorata clause restricting liability upon concurring insurers to an apportionment basis. (2) An excess clause restricting liability upon an insurer to excess coverage after another insurer has paid up to its policy limits. (3) An escape clause

---

1. Comment, "Other Insurance" Clauses: The Lamb-Weston Doctrine, 47 Ore. L. Rev. 430 (1968).
2. This statutory requirement is found in our omnibus statute. Ind. Ann. Stat. § 39-4309 (1965 Repl) ; IC 1971, 27-1-13-7.

avoiding all liability in event of other insurance. Such provisions, standing alone, ordinarily present no problem and are given effect when only one of the concurrent policies contains an 'other insurance' clause. Controversies do arise, however, when more than one policy covers the same insured and each has an 'other insurance' clause restricting its liability because of existing separate coverage.

"Conflicts between concurrent insurance provisions have arisen in a number of areas. They are classified in 7 Am. Jur. 2d, Automobile Insurance, section 202, page 544. With some rearrangement and editing, they are thus grouped: (1) One policy contains an excess clause, the other a pro rata clause, see 76 A. L. R. 2d 512; (2) one policy contains a non-liability or escape clause, the other a pro rata clause, see 46 A. L. R. 2d 1167; (3) both policies contain an excess clause, see 69 A. L. R. 2d 1122; (4) one policy contains an excess clause, the other a non-liability or escape clause, see 46 A. L. R. 2d 1165; (5) one policy contains what has been termed a specific escape clause which specifies the kinds of 'other insurance', existence of which will relieve the former insurer of liability, see 46 A. L. R. 2d 1168. Note also 8 Blashfield, Automobile Law and Practice, Third Ed., sections 345.10-345.14. Our problem seems to focus upon the last two types. *Union Ins. Co. (Mutual)* v. *Iowa Hardware Mut. Ins. Co.* (1970), 175 N. W. 2d 413.

The myriad of approaches employed by various courts to determine liability when policy provisions conflict is in hopeless disarray. However, as the issue is squarely before us, we choose to examine the problem in considerable detail.

No rational logic can sustain the rule that places liability upon the insurer whose policy was first obtained. The significant inquiry is whether coverage exists at the time of the accident when the policy provisions first come into play. The length of time of the coverage is otherwise immaterial to the critical issue.

The "primary tortfeasor rule" must likewise fail. This arbitrary approach denies coverage to an unnamed insured even though the insurer intended to protect him as an additional insured person. For example, liability coverage under this method extends only to a *named* insured who is the tortfeasor.

Some courts have attempted to resolve the issue of liability by determining which policy provision is more specific and then giving the more specific provision effect over the more general clause. Therefore, a policy containing a general escape clause will yield to one containing a specific excess clause. *Zurich General Accident & Liability Ins. Co* v. *Clamor, supra*. The obvious result of such judicial determination is to encourage the drafting of more specific escape clauses. Some courts have given effect to these specific clauses.[3] Others have not.[4] At any rate, the undeniable result of such decisions has been a draftsmanship foray. As the Iowa court has summarized:

> "Demonstrably the many methods employed in an attempt to resolve the problem of double coverage through conflicting clauses have produced nothing less than utter confusion. Each of the foregoing approaches has been described by someone as a mechanical application of some arbitrary test. As previously disclosed, the prior-in-time, and search for a primary tortfeasor, have been largely rejected. The fixing of liability by determining which of two clauses is the more specific is no better. Moreover, it encourages the continuing draftsmanship battle by which insurers seek still more specific policy terms, and the end is not in sight. 65 Colum. L. Rev. 319, 322.
> "In effect Union Insurance says, because of Iowa Hardware's policy it owes only excess insurance, or at most only a pro rata share. By reason of the Union Insurance policy, Iowa Hardware takes the position it owes nothing. To solve the problem by picking up one policy, and reading it with a result which would be opposite to that reached if the other policy were first in order, is at best a pseudosolution in that it only aggravates a circular riddle." 175 N. W. 2d at 417.

The policies at issue have conflicting provisions. In the final analysis, we must be concerned with protecting the insured person. Competing clauses between insurers should not be allowed judicial sanction at the expense of removing the insured's coverage:

> ". . . The sense of avoidance logic, employed by insurers against each other, when applied against the insured, would

---

3. 8 Appleman, Insurance Law & Practice, 2nd ed., § 4914.
4. These cases are collected at 46 A.L.R. 2d 1165.

> lead to a conclusion that the latter, though protected by two policies, actually has none. This would be an unconscionable result. With the issue thus sharply drawn between two or more insurers, the insured is actually left helpless on the sidelines. See Graves v. Traders & General Insurance Company, La. App., 200 So. 2d 67, 77, aff'd 252 La. 709, 214 So. 2d 116, 117-118, and Federal Ins. Co. v. Atlantic National Ins. Co., 25 N. Y. 2d 71, 302 N. Y. S. 2d 769, 771-772, 250 N. E. 2d 193. Furthemore, under any such theory the insured loses benefit of the rule, supra, requiring that policies be construed strictly against the insurer." 175 N. W. 2d at 417-418.

This Court must seek an equitable result preponderating in favor of the insured who has paid premiums for such insurance. At the same time, we must remain conscious that a contract of indemnity does not allow windfall gains nor any recoupment above the damage actually suffered.

Both policies, when read separately, appear to afford coverage to the insured. Yet each "other insurance" provision forces an examination of its opponent. This "circular riddle" can be resolved by (1) attempting to give effect to one policy provision over the other, or (2) applying mechanical or arbitrary rules hereinbefore discussed, or (3) holding both clauses to be conflicting and mutually repugnant and, therefore, disregarding them. We find the last mentioned alternative to be the most reasonable. This method not only provides indemnification for the insured, but also, through the process of proration, gives effect to the general intent of the insurers.

The insurers draft "other insurance" provisions for the purpose of reducing their liability when the insured has access to other collectible insurance. Therefore, we can give effect to this purpose by holding that where "other insurance" clauses conflict, as in the case at bar, they are to be ignored and each insurer is liable for a prorated amount of the resultant damage not to exceed his policy limits. In such a case, there exists *dual* primary liability.

In the instant case, if neither policy had contained the "other insurance" provision, then each insurer would have been liable

in a prorated amount up to the respective policy limits. The same reasonable result should be reached where the policy provisions conflict:

> "This rule was adopted by the Oregon Supreme Court in Lamb-Weston, Inc. v. Oregon Auto Ins. Co., 219 Or. 110, 341 P. 2d 110, reh. denied, 219 Or. 110, 346 P. 2d 643 (1959). One policy contained an excess clause while the other contained a prorata clause. But this was not important. The court found it as impossible to call either policy primary as to capture a 'will o' the wisp.' It recognized the 'absurdity of attempting to assume that where conflicting "other insurance" provisions exist by reason of overlapping coverages of the same occurrence the provisions of one policy must yield to the provisions of the other.' Instead, citing Oregon Auto. Ins. Co., supra, it held
>
>> " 'The "other insurance" clauses of all policies are but methods used by insurers to limit their liability, whether using language that relieves them from all liability (usually referred to as an "escape clause") or that used by St. Paul [Ins. Co.] (usually referred to as an "excess clause") or that used by Oregon [Ins. Co.] (usually referred to as a "prorata clause"). In our opinion, whether one policy uses one clause or another, when any come in conflict with the "other insurance" clause of another insurer, regardless of the nature of the clause, they are in fact repugnant and each should be rejected in toto.'
>
> "Since the loss in *Lamb-Weston* was less than the total policy limits, it was prorated.
>
> "We hold that *Lamb-Weston* is the better rule of law and should be applied in all cases where conflicting 'other insurance' clauses of the excess, prorata or escape types are found. We believe this to be the better and more reasonable rule on several grounds:
>
>> " 'It does not arbitrarily pick one of the conflicting clauses and give effect to it; it does not deprive the insured of any coverage; it is not prejudicial in giving a windfall to one insurer at the expense of another; it does not encourage litigation between insurers; it does not delay settlements. On the other hand, it does enable underwriters to predict the losses of the insurers more accurately; it does preclude the use of illogical rules developed by the courts (e.g., first in time, specific v. general and primary tort-featsor doctrines) ; and it does give a basis for uniformity of result. In addition, prorating the loss among all insurers is a rule

that can be applied regardless of the number of insurers involved and regardless of the type of conflicts that are created by the "other insurance" clauses. Finally, the rule is simpler, more convenient and easier to apply than the majority rule.' " *Werley* v. *United Services Automobile Association* (1972), 498 P. 2d 112, 118-119.

Indiana urges that adoption of the pro-rata rule would "create a situation of utter chaos insofar as the investigation and defense of the claim is concerned because neither company would be willing to undertake the expense of investigation and defense on its own and therefore neither company would do so." We do not find this argument persuasive. Under our view of the rule which we have adopted, the insurers *share primary* liability. Both are obligated to defend and are free to enter an agreement between them as to costs of investigation, defense, settlement, etc. We are not competent here to project the actuarial results with respect to premium rates which may absorb any added cost to insurers. However, we are confident that the automobile insurance industry has such expertise and will find internal cooperation desirable and effective. The reasoning of the Alaska Supreme Court is on point:

> "We cannot accept U. S. A. A.'s assertions that *Lamb-Weston* is undesirable because it has generated obstructionist litigation in other jurisdictions . . . Any obstructionist litigation following adoption of the doctrine would merely represent an informed litigative choice by those members of the insurance industry who sought to get out from under the principle. When a jurisdiction has formulated a settled rule or principle, each person resisting its application must determine for himself whether the merits of his case warrant an exception to that principle or rule. As far as the small premium is concerned, the issuance of a policy of insurance is always a risk taking venture. Calculation of the premium to be charged for that risk is a matter within the competency of the insurance carrier." 498 P. 2d at 119.

For all the foregoing reasons, transfer is granted and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

Arterburn, C.J., Givan and Prentice, JJ., concur; DeBruler, J., not participating.

NOTE.—Reported in 304 N. E. 2d 783.