AMERICAN ECONOMY INSURANCE COMPANY, Appellant (Defendant, Cross–Claimant and Counterclaimant below),

v.

MOTORISTS MUTUAL INSURANCE COMPANY, Appellant (Defendant, Cross–Defendant below),

and

Kimberly Natalie and Michael Natalie, Appellee (Plaintiff, Counterdefendants below).

No. 47A05–9108–CV–277.

Court of Appeals of Indiana, Fifth District.

June 17, 1992.

Don M. Robertson, James L. Whitlatch, Bunger, Robertson, Kelley & Steger, Bloomington, for Motorists Mut. Ins. Co.

Danford R. Due, Charles Fred Miller, Stewart, Due, Miller & Pugh, Indianapolis, for American States Ins. Co. and American Economy Ins. Co.

Kenneth L. Nunn, Betsy Greene, Nunn, Kelley & Greene, Bloomington, for Kimberly and Michael Natalie.

SHARPNACK, Judge.

American Economy Insurance Co. (American) and Motorists Mutual Insurance Co. (Motorists) appeal the trial court's declaratory judgment order. Both companies appeal the court's stacking of the two underinsured automobile insurance policy limits and Motorists appeals the court's prorating of coverage between the two companies. We reverse and remand.

Both American and Motorists present two issues for our review, which we restate as the following:

(1) Whether the trial court erred by stacking the limits of American's and Motorists's underinsured motorist coverages;

(2) Whether the trial court erred by prorating coverage between American and Motorists.

The facts of this case are not in dispute. On October 4, 1987, Kimberly Natalie (Natalie), who was insured by Motorists Mutual Insurance Co. (Motorists), and William Jackson (Jackson), who was insured by Vernon Fire and Casualty Insurance Co. (Vernon), were involved in an automobile accident. The automobile that Natalie was driving at the time of the accident belonged to Charles Belcher (Belcher), who was insured by American Economy Insurance Co. (American).

Because Jackson allegedly caused the accident, Vernon paid its limits of liability coverage in the amount of $25,000 to Natalie for the injuries she suffered as a result of the accident. On October 3, 1989, Natalie filed suit against American, claiming that the proceeds from Vernon's insurance policy did not fully compensate her for her injuries. On June 18, Natalie filed an amended complaint, adding Motorists as a defendant. Natalie's suit seeks compensation under the underinsured motorist coverage provisions of American's and Motorists's policies.

On August 7, 1990, American filed a cross-claim and a counter-claim for declaratory judgment, seeking a declaration from the court as to the coordination of coverage between American and Motorists for Natalie's alleged underinsured loss. Both American and Motorists filed briefs on the declaratory judgment action, and, while they conceded that Natalie was covered under their respective policies, they disagreed as to what share of the damages they should each bear. American argued that it should bear only a pro rata share of the damages; Motorists argued that American carried primary coverage and Motorists carried excess coverage.

On March 19, 1991, the court conducted a hearing on the pending declaratory judgment action and subsequently ordered in relevant part as follows:[1]

"1. That the maximum amount of underinsured motorist coverage available to Natalie from Motorists and American Economy policies is $135,000.00 which represents the total of all applicable limits less the recovery made from the tort feasor, Jackson ($25,000.00).

2. That underinsured motorists payments under the Motorist and American Economy policies shall be made based upon proration of the Motorists limits ($100,000.00) and the American Economy limits ($60,000.00). Accordingly, Motorists' exposure to Natalie would amount to 62.5% of recoverable damages up to $135,000.00 and American Economy's exposure would amount to 37.5% of recoverable damages up to $135,000.00."

(Record, pp. 158, 180.)

Both American and Motorists appeal from the trial court's order. First, both companies argue that the trial court erred when it determined that the maximum amount of underinsured motorist coverage available to Natalie was $135,000. According to American and Motorists, the trial court impermissibly stacked the limits of American's and Motorists's underinsured motorist coverages. American and Motorists both argue that the maximum amount of underinsured coverage available to Natalie is $100,000, not $135.000. Second, American and Motorists disagree as to

---

1. Following a joint request by American and Motorists, the court's May 14, 1991 order was corrected by a "Nunc Pro Tunc Order" entered June 10, 1991.

whether coverage between the two companies should be prorated. American contends that the trial court correctly determined the ratio of coverage between the two companies; Motorists argues that American carries primary coverage and Motorists is responsible only for excess coverage.

■ Pursuant to the Uniform Declaratory Judgments Act, declaratory orders, judgments and decrees have the force and effect of final judgments and may be reviewed as other orders, judgments and decrees. Ind.Code §§ 34–4–10–1; 34–4–10–7. Our case revolves around the interpretation of two insurance policies. The interpretation of an insurance policy, as with other contracts, is primarily a question of law for the court. Only where a contract is ambiguous and its interpretation requires extrinsic evidence must the fact finder determine the facts upon which the contract rests. If the language of an insurance policy is clear and unambiguous, the language should be given its plain and ordinary meaning. The policy should be interpreted most favorably to the insured if it is ambiguous. An insurance policy should be construed so as to further the policy's basic purpose of indemnity. *Tate v. Secura Insurance* (1992), Ind., 587 N.E.2d 665.

■ We deal first with whether the trial court erred by stacking the underinsured motorist coverages of the American policy and the Motorists policy.

According to American's policy:

" '*Uninsured motor vehicle*' means a land motor vehicle or trailer:

\* \* \* \* \* \*

(b) Which is an underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle for which the sum of all liability bonds or policies at the time of an *accident* provides at least the amounts required by the financial responsibility law of Indiana but their limits are less than the limits of this insurance...."

(Record, p. 71.) (emphasis in original.)

One of the conditions for American's underinsured motorists insurance reads as follows:

"If this policy and any other policy providing similar insurance apply to the same *accident*, the maximum limit of liability under all the policies shall be the highest applicable limit of liability under any one policy."

(Record, p. 78.) (emphasis in original.) American's limit for underinsured motorists coverage is $60,000.

According to Motorists's policy:

"1. When the term *uninsured motor vehicle* is used in Part C, it shall also include *underinsured motor vehicle* as defined below.

\* \* \* \* \* \*

'*Underinsured motor vehicle*' means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

\* \* \* \* \* \*

The limit of Bodily Injury Liability shown in the Declarations for 'each person' for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of *bodily injury* sustained by any one person in any one accident."

(Record, p. 88.) (emphasis in original.)

Motorists's policy also states:

"If there is other applicable similar insurance available under more than one policy or provision of coverage:

1. Any recovery for damages for *bodily injury* or *property damage* sustained by an *insured* may equal but not exceed the higher of the applicable limit for any one vehicle under this insurance or any other insurance."

Motorists's limit for underinsured motorists coverage is $100,000.

Both American and Motorists argue that their respective insurance policies contained clear and unambiguous clauses which precluded the stacking of underinsured motorist coverages and that such

clauses are valid and enforceable under Indiana's statutory law concerning underinsured motorists coverage. We agree.

Pursuant to Ind.Code § 27–7–5–5:

"(a) The policy or endorsement affording [underinsured motorists coverage] may provide that the total limit of all insurers' liability arising out of any one (1) accident shall not exceed the highest limits under any one (1) policy applicable to the loss ..."

In *High v. United Farm Bureau Mutual Insurance Co.* (1989), Ind.App., 533 N.E.2d 1275, the first district considered whether Farm Bureau was entitled to summary judgment based upon a clause in the insurance policies which precluded the stacking of uninsured motorist coverages. The *High* court held that "under Indiana law an insurance company may limit uninsured motorist coverage with an anti-stacking clause." *Id.* at 1278. The court reasoned that, by adding I.C. § 27–7–5–5 to the Uninsured Motorists Statute, the legislature changed the public policy of Indiana concerning anti-stacking clauses, determined anti-stacking clauses no longer offend public policy, and specifically authorized anti-stacking provisions. *Id.*

Therefore, pursuant to *High* and I.C. § 27–7–5–5, we hold that the trial court erred by stacking the underinsured motorist coverages of the American policy and the Motorists policy. The maximum amount of underinsured motorist coverage available to Natalie from the Motorists's policy and the American policy is $100,000, not $135,000.

■ Next, we address the issue of whether the trial court erred by prorating coverage between American and Motorists. American and Motorists disagree as to whether coverage between the two companies should be prorated.

According to American's policy:

"In return for the payment of the premium and subject to all the terms of this policy, *we* agree with *you* as follows:

\* \* \* \* \* \*

A. *"You"* and *"your"* mean the person or organization shown as the named insured in ITEM ONE of the declarations."

(Record, p. 79.) (emphasis in original.) The person shown as the named insured in Item One of the declarations is Charles E. Belcher.

American's policy also states:

"OTHER INSURANCE.

1. For any covered *auto you* [Charles E. Belcher] own this policy provides primary insurance. For any covered *auto you* [Charles E. Belcher] don't own, the insurance provided by this policy is excess over any other collectible insurance.

\* \* \* \* \* \*

2. When two or more policies cover on the same basis, either excess or primary, *we* will pay only *our* share. *Our* share is the proportion that the limit of *our* policy bears to the total of the limits of all the policies covering on the same basis."

(Record, p. 82.) (emphasis in original.)

According to Motorists's policy:

"In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

DEFINITIONS

A. Throughout this policy, 'you' and 'your' refer to:

1. The 'named insured' shown in the Declarations; and

2. The spouse if a resident of the same household."

(Record, p. 90.) The named insureds shown in the Declarations are Michael and Kimberly Natalie.

Motorists's policy also states:

"OTHER INSURANCE

If there is other applicable similar insurance available under more than one policy or provision of coverage:

\* \* \* \* \* \*

2. Any insurance we provide with respect to a vehicle you [Michael and Kimberly Natalie] do not own shall be

excess over any other collectible insurance."

(Record, p. 88.)

American contends that the trial court correctly determined that coverage between the two companies should be prorated. American relies upon *Indiana Insurance Co. v. American Underwriters, Inc.* (1973), 261 Ind. 401, 304 N.E.2d 783, to support its argument that, where two insurance policies contain provisions which are conflicting and mutually repugnant, the respective insurance coverages should be prorated. We disagree with American's argument that *Indiana Insurance Co.* controls this case.

In *Indiana Insurance Co.*, our supreme court was faced with the issue of which insurance policy would prevail "when a tortfeasor comes within the coverage of two insurance policies, one policy providing an 'escape' clause when there is other insurance against loss, and the other policy providing only 'excess' coverage when there is other valid and collectible insurance." *Id.* 304 N.E.2d at 784. American Underwriters's policy contained the following "escape clause": " 'Other Insurance. If the insured has other insurance against loss to which the liability coverage applies, then this policy shall not in any way apply.' " *Id.* Indiana's policy contained an "excess coverage clause" which declared that it was responsible only for excess insurance over any other valid and collectible insurance. *Id.*

After giving careful consideration to both indemnification for the insured and the general intent of insurers, the court held as follows:

> "[W]here 'other insurance' clauses conflict, as in the case at bar, they are to be ignored and each insurer is liable for a prorated amount of the resultant damage not to exceed his policy limits. In such a case, there exists *dual* primary liability."

*Id.* at 787. (emphasis in original.)

In our case, we do not have two "other insurance" clauses that conflict. Therefore, under Indiana law, the obligations of Motorists and American to pay damages are governed by the terms of their respective insurance contracts. *American States Insurance Co. v. Williams* (1972), 151 Ind. App. 99, 278 N.E.2d 295. As indicated in the policy provisions we set out, American's policy clearly stated that it carried primary insurance for Belcher's auto when it was involved in the accident; Motorists's policy clearly stated that it carried only excess coverage.

American directs us to the language of its policy which states that "[w]hen two or more policies cover on the *same* basis, *either excess or primary*, we will pay only our share." (emphasis added.) According to American, because both policies clearly provide coverage on the same basis, American is responsible only for its share of the damages. This argument by American must fail. According to this provision, when two or more policies *both* cover *either* on an excess basis *or* on a primary basis, American will pay only its share. While the two policies here may both provide underinsured motorists coverage to Natalie, they do not both cover on a primary basis or on an excess basis—American covers on a primary basis and Motorists covers on an excess basis.

Determining that the language of the relevant insurance provisions are not conflicting and mutually repugnant, we hold that the trial court erred by prorating coverage between American and Motorists. American is responsible for primary coverage in the underlying matter and Motorists bears the responsibility for excess coverage.

■ While neither American, Motorists nor Natalie specifically raise the following as a separate issue on appeal, we address it here simply to provide guidance to the trial court upon remand. Pursuant to the recent holding in *Tate v. Secura Insurance* (1992), Ind., 587 N.E.2d 665, to the extent that Natalie's damages exceed the tortfeasor's liability limits of $25,000, both American's policy and Motorists's policy provide Natalie with underinsured motorists coverage for her bodily injury damages up to the limits of Motorists's policy, or $100,000. In other words, pursuant to *Tate,* the trial court may not order that the

$25,000 payment Natalie received from Vernon be deducted from her $100,000 limit for underinsured motorists coverage.

For all the foregoing reasons, this case is reversed and remanded to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

BARTEAU and STATON, JJ., concur.