**CITIZENS INSURANCE COMPANY, Appellant–Defendant,**

v.

**Cletus GANSCHOW, Appellee–Plaintiff,**

**and**

**Louis Pipito III and Standard Mutual Insurance Company, Appellees–Defendants.**

**No. 18A02–0604–CV–312.**

Court of Appeals of Indiana.

Jan. 12, 2007.

---

Robert B. Sutherland, Law Offices of Hanover Ins. Group, Broadview Heights, OH, Attorney for Appellant.

Mark R. Smith, Smith Fisher Maas & Howard, Indianapolis, IN, Attorney for Appellees.

## OPINION

BAKER, Judge.

This case involves the interpretation of two automobile insurance policies. Although both insurance companies agree that an injured passenger qualified as an insured under both policies, they disagree as to the amount of damages that each should pay.

Appellant-defendant Citizens Insurance Company (Citizens Insurance) appeals the trial court's grant of summary judgment in favor of appellee-defendant Standard Mutual Insurance Company (Standard Mutual) regarding appellee-plaintiff Cletus Ganschow's claim for uninsured motorist bodily injury coverage benefits (UM) under both insurance companies' policies. Specifically, Citizens Insurance argues that the trial court misconstrued the insurance companies' policies when it determined that UM coverage under the respective policies provided dual primary coverage with regard to Ganschow's claim and, therefore, that the coverage had to be prorated. Concluding that Citizens Insurance had no duty or obligation to provide UM coverage in these circumstances, we reverse the grant of summary judgment that was entered for Standard Mutual and remand this cause to the trial court with instructions to enter judgment for Citizens Insurance with regard to Ganschow's claim for UM coverage benefits.

### FACTS [1]

The undisputed facts are that on November 1, 2003, Ganschow was involved in a motor vehicle accident with Louis Pipito III in Muncie. At the time of the accident, Ganschow was a passenger in a vehicle

---

1. This court heard oral argument in Indianapolis on December 4, 2006. We commend counsel for their able presentations.

that was operated by Samantha Kinser and owned by Susan Messer. The accident was allegedly caused by the negligence of Pipito, an uninsured motorist. Ganschow claimed that he was injured in the accident and sought UM under separate automobile insurance polices issued by Citizens Insurance and Standard Mutual. Ganschow's parents were the named insureds under a policy issued by Citizens Insurance, and Standard Mutual was Messer's insurer. By virtue of the anti-stacking clauses in both the Standard Mutual and Citizens Insurance policies, Ganschow conceded that his total recovery of UM benefits cannot exceed $100,000.

For purposes of the accident, Ganschow qualified as an insured under the Standard Mutual policy because of his passenger status in Messer's vehicle. That policy provides UM coverage limits in the amount of $100,000 "per person" and $300,000 "per occurrence." Appellant's App. p. 29.

The Standard Mutual policy also contained the following "other insurance" provision:

> With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, *the insurance under part IV shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.*
> Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance and

the company shall not be liable for a greater proportion of any loss to which this Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance.

Appellee's App. p. 6 (emphasis supplied).

Ganschow also qualified as an insured under the policy issued by Citizens Insurance, which provided UM coverage limits in the amount of $50,000 per person and $100,000 per occurrence. The Citizens Insurance policy contained the following "other insurance" provision:

1.  Any recovery for damages for "bodily injury" or "property damage" sustained by an "insured" may equal but not exceed the higher of the applicable limit for any one vehicle under this insurance or any other insurance.

2.  Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

3.  We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

*Id.* at 7.

On August 18, 2005, Ganschow filed a complaint against Citizens Insurance and Standard Mutual, seeking recovery under the UM provisions of both policies for the injuries he sustained in the November 1, 2003, accident. Thereafter, on October 11, 2005, Standard Mutual filed its answer, which included a counterclaim and cross-claim for declaratory judgment seeking an order clarifying the coordination of coverage between Standard Mutual and Citizens Insurance for Ganschow's alleged uninsured loss. In essence, Standard Mutual argued that it should bear only a pro-rata share of the loss. In response, Citizens

Insurance maintained that Standard Mutual carried the primary UM coverage for Ganschow's claims and that Citizens Insurance carried only excess coverage.

On November 22, 2005, Standard Mutual filed a motion for summary judgment on its counterclaim/cross-claim for declaratory judgment. In particular, Standard Mutual asserted that "The Citizens Policy indicates that it provides [UM] coverage on an excess basis; the Standard Mutual Policy indicates that it provides [UM] coverage on a pro-rata basis." Appellant's App. p. 16. Thus, Standard Mutual argued that it was entitled to judgment as a matter of law declaring that the two insurance policies provide UM coverage on a pro-rata basis and that Citizen Insurance's share is one-third of Ganschow's damages, up to a maximum of $33,333.33, and Standard Mutual's share is two-thirds of the damages, up to a maximum of $66,666.67.

In response, Citizens Insurance filed a cross-motion for summary judgment on December 27, 2005. Citizens Insurance claimed that it was entitled to judgment as a matter of law because "under the plain terms of the 'other insurance' clauses contained within Defendants Standard Mutual's and Citizens' respective policies, Standard Mutual (as the insurer covering the owner (Messer) of the vehicle Defendant Ganschow occupied at the time of the accident) provides primary coverage and Citizens' coverage is excess." Id. at 36.

Following a hearing on the motions for summary judgment, the trial court issued an order on March 15, 2006, granting Standard Mutual's motion for summary judgment as to the coverage dispute. Specifically, the trial court found that both companies provided primary coverage with respect to Ganschow's UM claims. As a result, the trial court determined that it was required to prorate Standard Mutual's limits of $100,000 and Citizens Insurance's limits of $50,000. In the end, the trial court concluded that, in accordance with the policy limits, Standard Mutual's liability for Ganschow's claim amounted to two-thirds of the recoverable damages, up to a maximum of $66,666.67, and Citizens Insurance's liability amounted to one-third of the recoverable damages, up to a maximum of $33,333.33. Citizens Insurance now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

When reviewing a grant or denial of summary judgment, our well-settled standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Ind. Univ. Med. Ctr. v. Logan*, 728 N.E.2d 855, 858 (Ind.2000). Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and that the moving party deserves judgment as a matter of law. *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 152 (Ind.2005). All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Tibbs v. Huber, Hunt & Nichols, Inc.*, 668 N.E.2d 248, 249 (Ind.1996).

### II. Citizens Insurance's Claims

Citizens Insurance contends that the trial court's award of summary judgment was error because both insurers were obligated to pay damages in accordance with the specific terms of their policies. More specifically, Citizens Insurance maintains that the trial court erroneously determined that each insurer was to provide primary coverage on a prorated basis because the plain language of Standard

Mutual's policy indicated that its coverage was "primary," whereas Citizens Insurance's coverage was to be construed only as "excess" coverage. Appellant's Br. p. 1. Thus, Citizens Insurance claims that because its policy limits were less than those of Standard Mutual, it had no duty or obligation to provide UM coverage with regard to Ganschow's underlying claim.

In addressing these contentions, we first note that the interpretation of an insurance policy, as with other contracts, is primarily a question of law for the court. *Harrison v. Thomas,* 761 N.E.2d 816, 818 (Ind.2002). The provisions of an insurance contract are subject to the same rules of interpretation and construction as are other contract terms. *Anderson v. State Farm Mut. Auto. Ins. Co.,* 471 N.E.2d 1170, 1172 (Ind.Ct.App.1985). If a contract is clear and unambiguous, the language of the contract must be given its plain meaning. *Beam v. Wausau Ins. Co.,* 765 N.E.2d 524, 528 (Ind.2002). A court cannot and should not do violence to the plain terms of an insurance contract by artificially creating ambiguity where none exists. *Puryear v. Progressive N. Ins. Co.,* 790 N.E.2d 138, 141 (Ind.Ct.App. 2003).

Standard Mutual maintains that our Supreme Court's decision in *Indiana Ins. Co. v. Am. Underwriters, Inc.,* 261 Ind. 401, 304 N.E.2d 783 (1973), is dispositive of the issue presented here. In *Indiana Insurance,* an automobile operated by a permissive user struck two other automobiles, causing property damage. The automobile owner's policy contained an "escape clause," which provided that the policy did not apply if the driver had other available insurance. *Id.* at 402, 304 N.E.2d at 784–85. The driver's policy contained an "excess clause," which provided that there would be coverage that was in excess of any other valid and collectible insurance

that was available to the driver. *Id.* Inasmuch as the two "other insurance" clauses were in conflict with each other, our Supreme Court observed that

Both policies, when read separately, appear to afford coverage to the insured. Yet each "other insurance" provision forces an examination of its opponent. This "circular riddle" can be resolved by (1) attempting to give effect to one policy provision over the other, or (2) applying mechanical or arbitrary rules hereinbefore discussed, or (3) holding both clauses to be conflicting and mutually repugnant and, therefore, disregarding them. We find the last mentioned alternative to be the most reasonable. This method not only provides indemnification for the insured, but also, through the process of proration, gives effect to the general intent of the insurers.

The insurers draft "other insurance" provisions for the purpose of reducing their liability when the insured has access to other collectible insurance. Therefore, we can give effect to this purpose by holding that where "other insurance" clauses conflict, as in the case at bar, they are to be ignored and each insurer is liable for a prorated amount of the resultant damage not to exceed his policy limits. In such a case, there exists dual primary liability.

In the instant case, if neither policy had contained the "other insurance" provision, then each insurer would have been liable in a prorated amount up to the respective policy limits. The same reasonable result should be reached where the policy provisions conflict:

This rule was adopted by the Oregon Supreme Court in *Lamb–Weston, Inc. v. Oregon Auto. Ins. Co.,* 219 Or. 110, 341 P.2d 110, reh. denied, 219 Or. 110 [130], 346 P.2d 643 (1959). One policy contained an excess clause while the

other contained a prorata clause. But this was not important. The court found it was impossible to call either policy primary as to capture a 'will o' the wisp'. It recognized the 'absurdity of attempting to assume that where conflicting 'other insurance' provisions exist by reason of overlapping coverages of the same occurrence the provisions of one policy must yield to the provisions of the other.' Instead, citing *Oregon Auto. Ins. Co.,* supra, it held

> The 'other insurance' clauses of all policies are but methods used by insurers to limit their liability whether using language that relieves them from all liability (usually referred to as an 'escape clause') or that used by St. Paul (Ins. Co.) (usually referred to as an 'excess clause') or that used by Oregon (Ins. Co.) (usually referred to as a 'prorata clause'). In our opinion, whether one policy uses one clause or another, when any come in conflict with the 'other insurance' clause of another insurer, regardless of the nature of the clause, they are in fact repugnant and each should be rejected in toto.'

Since the loss in *Lamb–Weston* was less than the total policy limits, it was prorated.

We hold that *Lamb–Weston* is the better rule of law and should be applied in all cases where conflicting 'other insurance' clauses of the excess, pro rata or escape types are found. We believe this to be the better and more reasonable rule on several grounds:

'It does not arbitrarily pick one of the conflicting clauses and give effect to it; it does not deprive the insured of any coverage; it is not prejudicial in giving a windfall to one insurer at the expense of another; it does not encourage litigation between insurers; it does not delay settlements. On the other hand, it does enable underwriters to predict the losses of the insurers more accurately; it does preclude the use of illogical rules developed by the courts (e.g., first in time, specific v. general and primary tort-feasor doctrines); and it does give a basis for uniformity of result. In addition, prorating the loss among all insurers is a rule that can be applied regardless of the number of insurers involved and regardless of the type of conflicts that are created by the 'other insurance' clauses. Finally, the rule is simpler, more convenient and easier to apply than the majority rule.'

*Id.* at 407–09, 304 N.E.2d at 787–88 (quoting *Werley v. United Serv. Auto. Ass'n,* 498 P.2d 112, 118–19 (Alaska 1972)).

Notwithstanding the pronouncement in *Indiana Insurance,* Citizens Insurance seeks to distinguish that case from the circumstances here, and directs us to *American Economy Ins. Co. v. Motorists Mut. Ins. Co.,* 593 N.E.2d 1242 (Ind.Ct. App.1992). In *American Economy,* the evidence showed that Kimberly Natalie, an insured of Motorists Mutual Insurance Company (Motorists), was involved in a motor vehicle accident with an underinsured motorist. Natalie was operating a borrowed vehicle at the time of the accident that was owned by Charles Belcher, an insured of American Economy Insurance Company (American Economy). *Id.* at 1243. Natalie filed suit against Motorists and American Economy seeking compensation under the UM provisions of both insurers' policies. Both Motorists and American Economy acknowledged that Natalie was covered under their respective policies but disagreed as to the priority upon which their coverages applied. *Id.*

Like the policies in this case, American Economy and Motorists' policies contained similar "other insurance" clauses. Specifically, American Economy's policy provided: "For any covered auto you [Charles Belcher] own this policy provides primary insurance. For any covered auto you [Charles Belcher] don't own, the insurance provided by this policy is excess over any other collectible insurance." *Id.* at 1245. Motorists's policy stated: "Any insurance we provide with respect to a vehicle you [Kimberly Natalie] do not own shall be excess[.]" *Id.* at 1245–46.

American Economy argued—like Standard Mutual argued and the trial court held in the instant case—that under Indiana law, all "other insurance" provisions are automatically deemed mutually repugnant and, therefore, should be ignored, and all policies that apply to the same loss should be made to provide dual primary coverage on a prorated basis. Appellant's App. p. 11. However, in analyzing the respective "other insurance" clauses, this court observed that Natalie—Motorists's named insured—was injured while occupying a vehicle that she did not own, and that American's named insured—Belcher—was the owner of the vehicle. Hence, those circumstances implicated the excess provision of Motorists's "other insurance" clause, but not the excess provisions of American Economy's "other insurance" clause. As a result, we determined that Motorists carried excess UM coverage, while American Economy carried the primary coverage. *Id.* at 1246.

Contrary to the position advanced by Standard Mutual in this case, in *American Economy,* we expressly rejected the claim that *Indiana Insurance* mandates that a blanket rule should apply whenever two insurance policies provide coverage for the same loss. In particular, we made the following observation:

American contends that the trial court correctly determined that coverage between the two companies should be prorated. American relies upon *Indiana Insurance Co. v. American Underwriters, Inc.* (1973), 261 Ind. 401, 304 N.E.2d 783, to support its argument that, where two insurance policies contain provisions which are conflicting and mutually repugnant, the respective insurance coverages should be prorated. We disagree with American's argument that *Indiana Insurance Co.* controls this case.

In *Indiana Insurance Co.,* our supreme court was faced with the issue of which insurance policy would prevail "when a tortfeasor comes within the coverage of two insurance policies, one policy providing an 'escape' clause when there is other insurance against loss, and the other policy providing only 'excess' coverage when there is other valid and collectible insurance." *Id.* 304 N.E.2d at 784. American Underwriters's policy contained the following "escape clause": " 'Other Insurance. If the insured has other insurance against loss to which the liability coverage applies, then this policy shall not in any way apply.' " *Id.* Indiana's policy contained an "excess coverage clause" which declared that it was responsible only for excess insurance over any other valid and collectible insurance. *Id.*

After giving careful consideration to both indemnification for the insured and the general intent of insurers, the court held as follows:

[W]here 'other insurance' clauses conflict, as in the case at bar, they are to be ignored and each insurer is liable for a prorated amount of the resultant damage not to exceed his policy limits. In such a case, there exists dual primary liability.

*Id.* at 787 (emphasis in original).

In our case, we do not have two "other insurance" clauses that conflict. Therefore, under Indiana law, the obligations of Motorists and American to pay damages are governed by the terms of their respective insurance contracts. *American States Insurance Co. v. Williams* (1972), 151 Ind.App. 99, 278 N.E.2d 295. As indicated in the policy provisions we set out, American's policy clearly stated that it carried primary insurance for Belcher's auto when it was involved in the accident; Motorists's policy clearly stated that it carried only excess coverage.

American directs us to the language of its policy which states that "[w]hen two or more policies cover on the same basis, either excess or primary, we will pay only our share." (emphasis added.) *According to American, because both policies clearly provide coverage on the same basis, American is responsible only for its share of the damages. This argument by American must fail. According to this provision, when two or more policies both cover either on an excess basis or on a primary basis, American will pay only its share. While the two policies here may both provide underinsured motorists coverage to Natalie, they do not both cover on a primary basis or on an excess basis— American covers on a primary basis and Motorists covers on an excess basis.*

Determining that the language of the relevant insurance provisions are not conflicting and mutually repugnant, we hold that the trial court erred by prorating coverage between American and Motorists. American is responsible for primary coverage in the underlying matter and Motorists bears the responsibility for excess coverage.

*Am. Econ.,* 593 N.E.2d at 1246 (emphasis added).

Subsequently, our Supreme Court granted transfer in *American Economy* and affirmed this court's decision that dealt with the priority of coverage issue:

On remand, the trial court should observe that appellees would first have recourse against American as the primary insurer for its underinsured coverage limits of $60,000, less the $25,000 already paid by Vernon in behalf of the tortfeasor. Next, appellees would have access to Motorists' excess coverage of $100,000, less the $25,000 previously paid by Vernon.

In no event, however, may appellees' underinsured motorist coverage recoveries exceed the aggregate underinsured motorist coverage maximum of $100,000, consistent with the Court of Appeals interpretation of the "non-stacking" provisions of both policies. In all respects other than the issues discussed above, the opinion of the Court of Appeals is affirmed pursuant to Ind.Appellate Rule 11(B)(3).

*Am. Econ. Ins. Co. v. Motorists Mut. Ins. Co.,* 605 N.E.2d 162, 164–65 (Ind.1992).[2]

In examining the above, it is indeed apparent that the holding in *American Economy* marks our Supreme Court's repudiation of any "blanket" application of the *Lamb–Weston* rule—contrary to what the trial court adopted in this case. That said, we reject the notion that the "other insurance" clauses contained within the two policies must necessarily be declared mutually repugnant.

Nonetheless, American Standard asserts that this court's decision in *United Farm Bureau Mut. Ins. Co. v. Nationwide Mut.*

---

**2.** While our Supreme Court reversed this court with respect to the interpretation of an "amounts payable" provision under the insur- ance policy, such a provision is not at issue here.

*Fire Ins. Co.,* 678 N.E.2d 1165 (Ind.Ct. App.1997) should control the outcome because we have extended the *Lamb–Weston* rule to non-automobile insurance settings. In *United Farm Bureau,* two horses being boarded by landowners escaped and were struck by an automobile while the horses were standing on a state highway. The driver and passenger filed suit against the horses' owner, as well as the boarding landowners. The horse owner sought coverage as an additional insured under the landowner's policy and as the named insured under his own homeowners policy. The landowner's policy provided coverage on a pro rata basis as follows:

> If an insured has other insurance for a loss covered by this policy we pay under this policy only a share of the loss. The share is computed by adding up the limits of this policy and all other valid and collectible insurance and finding the percentage of the total limits this policy represents.

*Id.* at 1166. In contrast, the horse owner's policy set forth the following coverage: "This insurance is excess over other valid and collectible insurance. This does not apply to insurance written as excess over the limits of liability that apply in this policy." *Id.* The trial court determined that the landowner's policy provided primary coverage, and the horse owner's insurer appealed. A divided panel of this court reversed, observing that the landowner's insurer's pro rata clause conflicted with the horse owner's insurer's excess clause, rendering the two clauses mutually repugnant: "We conclude that *Indiana Ins.* Co. controls this case. We hold that there being no basis for concluding that either policy was intended to be primary coverage, the two 'other insurance' clauses are in conflict and are to be disregarded." *Id.* at 1168.[3]

Despite the holding in *United Farm Bureau,* we cannot agree with Standard Mutual's assertion that the two "other insurance" clauses are mutually repugnant in light of our examination of the policies here. In *United Farm Bureau,* the landowner's policy provided that its coverage prorated whenever "an insured has other insurance for a loss[.]" *Id.* at 1166. In contrast, the prorata provision of Standard Mutual's "other insurance" clause only applies wherever "similar" insurance is available to its insured. Appellant's App. p. 17. Moreover, the excess clause of the horse owner's policy in *United Farm Bureau* stated that its coverage was "excess over other valid and collectible insurance." 678 N.E.2d at 1166. In this case, however, the excess provision of Citizens Insurance and Standard Mutual's "other insurance" clauses are not triggered simply by the existence of "other valid and collectible insurance," but are triggered by the fulfillment of a specific condition—the ownership of a vehicle that was involved in the accident.

Because Standard Mutual's named insured was the owner of the vehicle in-

---

**3.** The author of this opinion dissented in *United Farm Bureau* on the ground that there should be no "blanket assumption" that "other insurance" clauses automatically conflict, and noted that the insurance clauses at issue were not in conflict:

> Farm Bureau's policy provides that "if an insured has other insurance for a loss covered by this policy we pay under this policy only a share of the loss." R. at 34. The policy then provides that its proportional share is computed by comparing the total insurance available through all of the poli-

cies to the coverage limit of its policy. On the other hand, Nationwide's policy provides that its coverage is "excess over other valid and collectible insurance." R. at 63. *Id.* It was further observed that Nationwide's policy did not provide coverage until Farm Bureau's policy limits were reached. Hence, because Farm Bureau did not have to pay its policy limits, the pro rata provisions in the Farm Bureau policy were not applicable and Farm Bureau was, therefore, responsible for paying the claims. *Id.* at 1169.

volved in the accident, the condition required to trigger the excess provision of Citizen Insurance's "other insurance" clause was satisfied. And Standard Mutual's was not. That said, it is apparent that the policies' respective provisions in this case are capable of being harmonized and permit us to give effect to the parties' intent. Indeed, the parties and the trial court all agree that the excess provision set forth in the first paragraph of Standard Mutual's "other insurance" clause does not apply, but Citizen Insurance's does. Appellant's App. 11, 31–32. Hence, contrary to Standard Mutual's contention that the "other insurance" clauses at issue establish a conflict, it is apparent that Standard Mutual provides UM coverage for Ganschow's claims on a primary basis and Citizens Insurance's UM covers the excess.

In accordance with such an application of the policies' terms, Citizens Insurance's excess coverage is not reached in this case in light of Standard Mutual's $100,000 limit of primary UM coverage. Thus, because Citizens Insurance's $50,000 limit of liability is less than Standard Mutual's $100,000 primary UM coverage limit, the "excess" coverage provision of Citizens Insurance's policy is not implicated. As a result, we conclude that the trial court erred in granting Standard Mutual's motion for summary judgment and prorating UM coverage between the two companies.

The judgment of the trial court is reversed and this cause is remanded with instructions to enter judgment for Citizens Insurance with respect to Ganschow's UM coverage claim.

BAILEY, J., and CRONE, J., concur.