**AETNA CASUALTY AND SURETY COMPANY**

v.

**LOUISIANA NATIONAL BANK.**

**Civ. A. No. 74-265.**

United States District Court,
M.`D. Louisiana.

Sept. 16, 1975.

Charles W. Franklin, Franklin, Moore & Walsh, Baton Rouge, La., for plaintiff.

W. S. McKenzie, Taylor, Porter, Brooks & Phillips, Gaton Rouge, La., for defendant.

E. GORDON̄ WEST, District Judge:

On June 26, 1973, the City of Baton Rouge and Parish of East Baton Rouge (City-Parish) made two deposits to the City-Parish checking account with the Louisiana National Bank in Baton Rouge, Louisiana. These two deposits, intended for the account of the City-Parish, totaled $114,981.38. Whether by malfunction of the encoding machine at the bank, or by operator error, or by intentional misconduct, the exact reason being unknown, the two deposits were machine encoded with the account number of Hamilton Plumbing Company, a new account opened five days earlier, instead of with the account number of the City-Parish. These misdirected deposits first appeared as deposits on the monthly statement of Hamilton Plumbing Company on June 29, 1973. This error went unnoticed by both the Bank and the City-Parish until March 25, 1974. In the meantime, between the date of the deposits and February 5, 1974, Mr. Frank B. Hamilton of Hamilton Plumbing Company withdrew and spent all of the money represented by these misdirected deposits. The City-Parish notified the Bank of the missing deposits on March 25, 1974. The Bank immediately traced the deposits, discovered the error and subsequent theft, tried to recover from Hamilton, failed, and then reimbursed the City-Parish by crediting its account with $114,981.38 from the Bank's own funds. Timely notice of the loss was given by the Bank to its insurer, Aetna Casualty and Surety Company, and the Bank continued in its efforts to minimize the loss, to no avail. Formal proof of loss was filed with Aetna on June 26, 1974. After Aetna failed to respond, the Bank made further written demand on August 29, 1974. Aetna did not communicate its rejection of the Bank's claim until sometime after the suit was filed on September 25, 1974, some ninety days after proof of loss was filed. Aetna does not deny the material facts pertaining to the loss. They simply contend that the loss complained of is not one that is covered under the Bankers Blanket Bond issued to the Bank by Aetna. The bond in question, Bankers Blanket Bond Standard Form No. 24, bearing bond number 39F2871, became effective on May 14, 1971 and was in full force and effect at the time of the loss here involved. As a part of the Insuring Agreements in the Bond it is provided that Aetna agrees to indemnify and hold the Bank harmless for:

"(B) loss of property (occurring with or without negligence or violence) through . . . *theft*, . . *misplacement*, . . . while the property is (or is supposed to be) lodged or deposited within any offices or premises located anywhere, . . " (Emphasis added.)

Property is defined as:

". . . money (i. e. currency, coin, bank notes, Federal Reserve notes), . . . evidences of debts, debentures, script, certificates, receipts, warrants, rights, transfers, coupons, drafts, bills of exchange, acceptances, notes, checks, withdrawal orders, money orders, . . ."

Under the heading "EXCLUSIONS" it is provided that:

"Section 2. THIS BOND DOES NOT COVER:

\*    \*    \*    \*    \*    \*

(e) . . . loss resulting from payments made or withdrawals from any depositor's account by reason of *uncollected* items of deposit having been credited by the insured to such account, unless such payments are made to, or withdrawn by, such depositor

. . . who is within the office of the insured at the time of such payment or withdrawal, . . ." (Emphasis added.)

The Bank contends that the loss is indeed covered by this bond. It contends that the money was misplaced into the Hamilton account by an erroneous credit to that account and was lost by theft when Hamilton, knowing the money was not his, withdrew it and spent it. It says the money was stolen by Hamilton while it "was (or was supposed to be) lodged or deposited within" an office of the Bank.

■ Aetna's defense is based upon its interpretation of Exclusion (e) of the bond agreement hereinbefore set forth. It argues that since Hamilton was not on the Bank premises when he wrote the checks on his account, thus dissipating the wrongfully credited funds, there was no coverage under the bond for the Bank's loss. Reliance on this exclusion is unfounded. Aetna's own exegesis of this exclusion's origin refutes such reliance. Aetna even refers to *First National Bank of Miami v. INA*, 495 F.2d 519 (CA 5—1974), where the Fifth Circuit discussed the same exclusion's development in 1969 by the Surety Association of America. According to the Analysis of Changes prepared by that Association, the revision of the Bankers Blanket Bond Standard Form 24 included the exclusion at issue here, referring to it as the "check kiting exclusion." Its purpose was to exclude coverage of losses suffered by banks in "kiting" schemes where persons drawing money on accounts credited with uncollected items of deposit were not physically on the bank premises.

We agree with Aetna that the language of the exclusion is not ambiguous. It simply is inapplicable to the facts of this case. The language of the exclusion contemplates that the uncollected items of deposit be put into the depositor's own account intentionally by him or his agent for the purpose of withdrawing money on that account, knowing the deposits to be uncollectible. A check "kiting" scheme would differ radically from a mistaken credit by a bank to a dishonest man's account who then spends the money. What *uncollected* items of deposit were involved here? None. In fact, the deposits were very collectible. They were actually deposited in the Bank by the City-Parish and then were withdrawn by Hamilton and dissipated. The exclusion envisaged a totally different kind of loss than that sustained here by LNB.

■ Aetna also alleges that mistaken "credits" to an account do not constitute misplacement of "property" as that term is defined in the bond. We disagree. The definition of "property" in the bond is certainly broad enough to include credit. We note that "property" is defined as "money" and "evidences of debt." The City-Parish certainly deposited "money" with LNB which was misplaced. Their deposit receipt would certainly be an "evidence of debt" owed to them as depositor-creditor of LNB. Aetna's argument is meritless. We agree with LNB that, "although the misplacement occurred through the use of modern computerized banking techniques, the misplacement was just as real as though cash dollars had been taken from a pigeon-hole designated for City-Parish funds and misplaced into a pigeon-hole designated for Hamilton funds."

We hold that, based upon the facts herein, the loss sustained by LNB was clearly covered by Section (B) of the Bankers Blanket Bond, and was not excluded.

■ La.R.S. 22:658 provides that all insurers shall pay the amount of any claim due within sixty days after satisfactory proofs of loss from the insured have been submitted. Failure to make such payments within sixty days, when such failure is found to be arbitrary, capricious, or without probable cause, subjects the insurer to payment of

penalties and attorney's fees. In cases of policies covering theft, the penalties *shall* be 25% of the claim plus all reasonable attorney's fees.

The question now boils down to whether Aetna's failure to pay LNB's claim was arbitrary and capricious. LNB timely filed a formal proof of loss with Aetna on June 26, 1974. LNB made an additional demand for payment on August 29, 1974. Aetna did not communicate rejection of LNB's claim; rather, they filed this suit for a judicial declaration of non-coverage on September 25, 1974, more than sixty days after proofs of loss were submitted by LNB.

In our opinion, the grounds relied upon for non-coverage are clearly meritless. The exclusion Aetna seeks to have this Court apply to the facts herein is clearly inapplicable. This is not a loss sustained in a check "kiting" scheme. In *Reichert v. Continental Ins. Co.*, 290 So.2d 730 (La.App. 1st Cir.—1974), writs refused, 294 So.2d 545 (La.—1974), a case also involving La.R.S. 22:-658 and an insurance company's arbitrary, capricious refusal to pay a claim, it. was stated:

> "Our jurisprudence has established the rule that an insurer's failure to properly interpret its own policy provisions does not constitute reasonable ground for refusal to pay a claim thereunder. Even though the issue raised is res nova under our jurisprudence, the risk of erroneous interpretation is deemed made at insurer's risk, not the insured's. *Campasi v. Mutual Benefit Health & Accident Association*, 207 La. 758, 22 So.2d 55; *Sequin v. Continental Service Life & Health Insurance Company*, 230 La. 533, 89 So.2d 113, both of which authorities deal with an action pur-

suant to Section 657. In substance, these authorities hold that where the issue is one of interpretation alone, the insurer's failure to pay, based solely on its own interpretation, is arbitrary and capricious. It seems obvious here that Insurer declined to pay solely for the purpose of creating a test case. In so. doing, it gambled upon the outcome of litigation which it was reasonably sure would ensue. We deem such action arbitrary." 290 So.2d at 735.

Accord: *Albert v. Cuna Mutual Ins. Soc.*, 255 So.2d 170 (La.App. 3rd Cir.—1971); *Niles v. Am. Bankers Insurance Co.*, 229 So.2d 435 (La.App. 3rd Cir.—1970); and *Thomas v. Universal Life Ins. Co.*, 201 So.2d 529 (La.App. 3rd Cir.—1967).

We conclude that LNB is clearly entitled to recover the 25% penalty and the attorney fee provided for in La.R.S. 22:658. Since all that was required to be done in this case by the attorneys for LNB was (1) file an answer and counterclaim; (2) answer seven Requests for Admissions; (3) file answers to six short interrogatories and (4) file this motion for summary judgment together with required memorandum of authorities, and since the issues involved were not of a complicated nature and since no court appearance was required herein, the Court concludes that an attorney fee of $750 would be reasonable.

Therefore, for these reasons, judgment will be entered herein in favor of Louisiana National Bank and against Aetna Casualty and Surety Company in the principal sum of $109,981.38, together with 25% of that amount as penalty plus the sum of $750 as attorney fees.