CINCINNATI INSURANCE COMPANY, Appellant–Plaintiff,

v.

AMERICAN ALTERNATIVE INSURANCE CORPORATION, David F. Milligan, Sharon Milligan, Clinton County, Indiana, Thomas Mylet, Linda C. Mylet, Melissa Wingett and James Wingett, Appellees–Defendants.

No. 12A02–0610–CV–874.

Court of Appeals of Indiana.

May 15, 2007.

---

Richard R. Skiles, Lynn M. Butcher, Skiles DeTrude Indianapolis, IN, Attorney for Appellant.

David L. Ferguson, Ferguson & Ferguson Bloomington, IN, Attorney for Appellees.

## OPINION

BARNES, Judge.

### Case Summary

Cincinnati Insurance Company ("Cincinnati") appeals the trial court's grant of summary judgment in favor of American Alternative Insurance Corporation ("AAIC"). We affirm.

### Issue

The issue before us is whether the "other insurance" clause in Cincinnati's policy is irreconcilable with the "other insurance" clause in AAIC's policy, requiring pro ration of coverage between both policies for an accident involving an insured of both companies.

### Facts

David Milligan was a volunteer ambulance driver for the Northeast Volunteer Ambulance Service ("NEVAS"), a governmental entity in Clinton County. On March 1, 2004, Milligan was involved in a multi-vehicle accident with two other motorists. At the time of the accident, Milligan was acting within the scope and course of his duties as a driver for NEVAS. However, Milligan was driving his personal automobile, a 2001 Ford Excursion, which he was leasing under a four-year lease agreement.

On the date of the accident, Milligan had a personal automobile insurance policy from Cincinnati, under which the Excursion qualified as an "owned" vehicle. The policy had liability limits of $100,000 per person/$300,000 per occurrence. Also, Milligan qualified as an insured under a

policy issued to Clinton County by AAIC because he was acting within the scope of his duties for NEVAS at the time of the accident. The AAIC policy provided liability coverage of up to $1 million per accident. The Cincinnati policy provided in part:

OTHER INSURANCE

A. If there is other applicable liability insurance, "we" will pay only "our" share of the loss. "Our" share is the proportion that "our" limit of liability bears to the total of all applicable limits. Any insurance "we" provide for a vehicle "you" do not own shall be excess over any other collectible insurance....

App. p. 251. The AAIC policy in turn provided in part:

5. Other Insurance

a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance....

*Id.* at 343.[1]

Cincinnati has paid a total of $163,733.97 in settlement of various claims arising from the accident. AAIC has paid $105,000.00. On May 24, 2005, Cincinnati filed a declaratory judgment action against AAIC, asserting that liability coverage for any claims against Milligan arising from the accident had to be paid by both Cincinnati and AAIC on a pro rata basis, according to the respective limits of the two policies. On September 27, 2006, on cross-motions for summary judgment, the trial court entered summary judgment in favor of AAIC. Specifically, the trial court concluded that Cincinnati was required to pay claims up to its policy limits without pro

---

1. "You" in the Cincinnati policy referred to Milligan, while "you" in the AAIC policy referred to Clinton County.

rata contribution from AAIC and that AAIC's policy required payment only after exhaustion of Cincinnati's policy limits. Cincinnati now appeals.

## Analysis

When reviewing a summary judgment ruling, we apply the same standard as the trial court. *Auto–Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1282 (Ind.2006). Summary judgment shall be entered "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Ind. Trial Rule 56(C)). During our review, all facts and reasonable inferences drawn from them are construed in favor of the nonmoving party. *Id.* We will affirm a grant of summary judgment if it can be sustained on any theory or basis in the record. *Payton v. Hadley*, 819 N.E.2d 432, 438 (Ind.Ct.App.2004).

Cincinnati contends that the "other insurance" provisions of its policy and AAIC's policy conflict and are mutually repugnant; therefore, the provisions are to be ignored and each insurer is required to pay claims related to Milligan's accident in proportion to the limits of each policy. Cincinnati specifically asserts AAIC owes it $139,547.91 in reimbursement for claims Cincinnati already has paid.

 "Other insurance" clauses in insurance policies usually take one of three forms. A pro rata clause apportions liability among concurrent insurers. *Indiana Ins. Co. v. American Underwriters, Inc.*, 261 Ind. 401, 404, 304 N.E.2d 783, 786 (1973) (quoting *Union Ins. Co. v. Iowa Hardware Mut. Ins. Co.*, 175 N.W.2d 413 (Iowa 1970)). An excess clause restricts liability upon an insurer to excess coverage after another insurer has paid up to its policy limits. *Id.*, 304 N.E.2d at 786. An escape clause purports to avoid all liability in the event of other insurance. *Id.* at 404–05, 304 N.E.2d at 786. Under these definitions, Cincinnati's policy had a pro rata "other insurance" clause with respect to "owned" automobiles, and AAIC's policy had an excess clause with respect to "non-owned" autos. Milligan's Expedition qualified as "owned" under the Cincinnati policy and "non-owned" under the AAIC policy.

The *Indiana Insurance* court was faced with a situation in which a permissive driver caused an accident while driving a vehicle owned by another. The policy covering the vehicle owner contained an escape clause that stated, "If the insured has other insurance against loss to which the liability coverage applies, then this policy shall not in any way apply." *Id.* at 402, 304 N.E.2d at 784. The driver was insured under a policy with an excess clause that stated, "the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess over any other valid and collectible insurance." *Id.*, 304 N.E.2d at 785. The "other insurance" portion of the driver's policy also contained a pro rata clause with respect to owned vehicles.[2] In attempting to harmonize these "other insurance" provisions, this court on appeal adopted the majority rule for resolving such disputes: "all else being equal, primary liability falls on the owner's insurer rather than the operator's insurer." *Id.* at 403, 304 N.E.2d at 785.

Our supreme court granted transfer and declined to adopt the so-called majority rule. Instead, it adopted the *"Lamb–Weston"* rule for resolving "other insurance" clause disputes, named after the Oregon

---

**2.** Thus, the driver's policy was very similar to the Cincinnati policy: it contained a pro rata clause with respect to owned vehicles and an excess clause with respect to non-owned vehicles.

Supreme Court's decision in *Lamb–Weston, Inc. v. Oregon Auto. Ins. Co.*, 219 Or. 110, 341 P.2d 110 (1959). As adopted by our supreme court, this rule provides, "where 'other insurance' clauses conflict, . . . they are to be ignored and each insurer is liable for a prorated amount of the resultant damage not to exceed his policy limits. In such a case, there exists *dual* primary liability." *Id.* at 407, 304 N.E.2d at 787. The court also held that the "other insurance" provisions in the case conflicted, although it did not explain why or how they conflicted. *Id.*

It also quoted with approval the Alaska Supreme Court's adoption of the *Lamb–Weston* rule, in which it stated, "*Lamb–Weston* is the better rule of law and should be applied in all cases where conflicting 'other insurance' clauses of the excess, pro rata or escape types are found." *Id.* at 408, 304 N.E.2d at 788 (quoting *Werley v. United Servs. Auto. Ass'n,* 498 P.2d 112, 119 (Alaska 1972)). Additionally, in 1981 this court applied *Indiana Insurance* and *Lamb–Weston* in a scenario very similar to the one before us now. *See United Servs. Auto. Ass'n v. American Interinsurance Exch.*, 416 N.E.2d 875 (Ind.Ct.App.1981). There, a permissive driver was driving a non-owned vehicle and was involved in an accident. The driver's policy and the owner's policy had identical "other insurance" provisions, containing a pro rata clause for owned automobiles and an excess clause for non-owned automobiles, similar in all relevant respects to Cincinnati's policy. The driver's insurer argued that its coverage was excess to the owner's insurer because the driver was driving a non-owned vehicle, and the driver's policy clearly stated it was to be excess in the event of an accident involving a non-owned vehicle. This court disagreed and held that the "other insurance" provisions conflicted and

ordered that each insurer pay a pro rata portion of liability, calculated by reference to each insurer's policy limits. *Id.* at 879.

We conclude, however, that *Indiana Insurance* and later cases relying on it are no longer valid authority because of a subsequent statutory development. In 1983, our legislature enacted Indiana Code Section 27–8–9–7, which provides:

(a) This section does not apply to cases covered by section 10 or 11 of this chapter.[3]

(b) In any case arising from a permittee's use of a motor vehicle for which the owner of the vehicle has motor vehicle insurance coverage, the owner's motor vehicle insurance coverage is considered primary if both of the following apply:

(1) The vehicle, at the time damage occurred, was operated with the permission of the owner of the motor vehicle.

(2) The use was within the scope of the permission granted.

(c) The permittee may not recover under any other motor vehicle insurance coverage available to the permittee until the limit of all coverage provided by the owner's policy is first exhausted.

In our view, this statute represents a direct abrogation of *Indiana Insurance* and cases like it, such as *United Services*. In other words, if this statute had been in effect when those cases were decided, it would have compelled a different result. Instead of proration of coverage between two insurers, the statute would have required exhaustion of the vehicle owner's insurance policy limits before the permittee driver's insurer could be asked to pay. The statute essentially represents the "majority rule" for resolving disputes caused by competing "other insurance"

**3.** Sections 10 and 11 concern garage or bailee liability policies.

provisions by placing primary responsibility for coverage upon the insurer of the owner of a vehicle, which approach this court had utilized but which our supreme court declined to adopt. *Indiana Insurance*, 261 Ind. at 403, 304 N.E.2d at 785.

█ It is true that by its literal terms, Indiana Code Section 27–8–9–7 does not directly apply in this case. This case does not involve a competition between the insurers of a permittee driver and a vehicle owner. Instead, Milligan was the lessee of the vehicle he was driving (although he was its "owner" for purposes of the Cincinnati policy) and AAIC technically insured Milligan as an employee of NEVAS, not a permittee driver of a vehicle NEVAS or Clinton County owned.[4] Still, we cannot ignore our legislature's apparent repudiation of the *Lamb–Weston* rule. When the legislature enacts a statute in derogation of the common law, we presume the legislature is aware of the common law and does not intend to make any change in it beyond what it declares either in express terms or by unmistakable implication. *Story Bed & Breakfast, LLP v. Brown County Area Plan Comm'n*, 819 N.E.2d 55, 66 (Ind.2004). By enacting a statute that would have directly applied to the facts of *Indiana Insurance* and *United Services* and would have compelled an opposite result in those cases, we conclude

the legislature unmistakably expressed its disapproval of blanket adherence to the *Lamb–Weston* rule in "other insurance" cases.[5]

The Tennessee Court of Appeals was faced with a similar situation in *Shelter Mutual Insurance Co. v. State Farm Fire and Casualty Co.*, 930 S.W.2d 570, 574 (Tenn.Ct.App.1996), *appeal denied*. The Tennessee Supreme Court had adopted the *Lamb–Weston* rule for resolving "other insurance" clause disputes, just like the Indiana Supreme Court. *See, e.g., State Farm Mut. Ins. Co. v. Taylor*, 511 S.W.2d 464, 465 (Tenn.1974). However, in 1974, the Tennessee legislature enacted a statute that is virtually identical to Indiana Code Section 27–8–9–7, regarding the primacy of a vehicle owner's insurance when an insured permittee driver is involved in an accident. See Tenn.Code § 56–7–1101. In *Shelter Mutual*, the court was asked to resolve a dispute concerning "other insurance" clauses in a church liability policy and a homeowner's policy. Although Tennessee Code Section 56–7–1101 clearly did not apply directly to the case, the court concluded that the statute superseded the decisions of the Tennessee Supreme Court that had utilized the *Lamb–Weston* rule, thus leaving no binding authority on the Tennessee Court of Appeals regarding the

**4.** Indiana Code Section 27–8–9–9(a) applies to lessors of motor vehicles and states that the insurance coverage provided by the lessee is primary over any insurance covering the lessor. This statute seems to apply only to short-term leases, not the long term lease of the type involved here with the Expedition; additionally, it is not known whether the lessee of the Expedition carried insurance on it, or even who the lessee was, i.e. whether it was Ford Motor Company or one of its divisions.

**5.** Although not referencing Indiana Code Section 27–8–9–7, another panel of this court recently stated that our supreme court has repudiated "any 'blanket' application of the

*Lamb–Weston* rule...." *Citizens Ins. Co. v. Ganschow*, 859 N.E.2d 786, 793 (Ind.Ct.App. 2007) (citing *American Econ. Ins. Co. v. Motorists Mut. Ins. Co.*, 605 N.E.2d 162, 164–65 (Ind.1992)). The *American Economy* decision summarily affirmed this court's holding that "other insurance" clauses in two competing insurance policies did not conflict and declining to apply the rule of *Indiana Insurance* and *Lamb–Weston*. *American Econ. Ins. Co. v. Motorists Mut. Ins. Co.*, 593 N.E.2d 1242, 1246 (Ind.Ct.App.1992). We agree that *American Economy* provides additional support for not utilizing the *Lamb–Weston* rule indiscriminately.

proper method of analyzing competing "other insurance" clauses. *Shelter Mutual*, 930 S.W.2d at 574. In the absence of such authority, the court adopted the view that it ought to strive to discern the intent of the contracting parties by applying traditional rules of contract interpretation, rather than indiscriminately applying the *Lamb–Weston* rule. *See id.* at 573 (citing *Jones v. Medox, Inc.*, 430 A.2d 488, 493 (D.C.Ct.App.1981)).

■ This approach makes sense to us and comports with the general practice of Indiana courts to construe insurance policies whenever possible in such a way as to give effect to the intent of the parties, just as with other contracts. *See, e.g., Gillespie v. GEICO General Ins. Co.*, 850 N.E.2d 913, 917 (Ind.Ct.App.2006). Also, Indiana courts recognize the freedom of parties to enter into contracts and presume that contracts represent the freely bargained agreement of the parties. *MPACT Constr. Group, LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 906 (Ind.2004). An insurance policy is governed by the same rules of interpretation as other contracts. *Morris v. Economy Fire and Cas. Co.*, 848 N.E.2d 663, 666 (Ind.2006). If the language of a policy is clear and unambiguous, we give the language its plain and ordinary meaning. *Briles v. Wausau Ins. Cos.*, 858 N.E.2d 208, 213 (Ind.Ct.App.2006). The power to interpret contracts does not extend to changing their terms, and we will not give insurance policies an unreasonable construction. *Id.*

■ If, in fact, it is impossible to reconcile competing "other insurance" clauses by reference to the ordinary rules of contract interpretation, then there might be room to invoke the *Lamb–Weston* rule. Such cases should be relatively rare. First and foremost, we should make every attempt to discern the intent of the parties who drafted "other insurance" clauses by reference to the language of the policies.

■ Here, we readily conclude that the "other insurance" clauses are reconcilable and provide that Cincinnati's policy provides sole primary coverage for this accident, with AAIC's policy only providing excess coverage upon exhaustion of the limits of the Cincinnati policy. AAIC's policy clearly and unambiguously states that it is excess with respect to accidents involving non-owned vehicles, such as Milligan's in this case. It is true that Cincinnati's policy does not expressly state that it is primary with respect to owned vehicles. However, it does state that it is "excess" with respect to non-owned vehicles but then lists several limited circumstances in which coverage nonetheless would be "primary" for a non-owned vehicle, leading to the clear implication that coverage also is primary with respect to owned vehicles such as Milligan's. App. p. 251.

As for the pro rata clause in Cincinnati's policy that governs owned vehicle claims, it states that coverage is pro rata with "other *applicable* liability insurance . . . ." Id. (emphasis added). However, AAIC's policy is not "applicable," because it clearly provides excess coverage only with respect to non-owned vehicles and, thus, it requires the exhaustion of underlying insurance coverage before its own coverage becomes "applicable." Reading both the Cincinnati and AAIC policies, we conclude the intent of those companies in drafting their respective policies is clear: Cincinnati and AAIC both provide primary coverage with respect to vehicles "owned" by their named insureds but excess coverage only for "non-owned" vehicles. Cincinnati's pro rata clause with respect to "owned" vehicles would come into play if there was other insurance that did not include an

excess or escape clause for "non-owned" vehicles, but that is not the case here.

This result is consistent with the majority rule in similar cases, which has been described as follows:

> If one policy has been issued to the owner of the vehicle causing damage, and another covers the same loss by virtue of the relationship to the accident of one who is not the vehicle owner, the latter's insurer, at least where its coverage is of the "excess insurance" variety, is in the favorable position and need not assume any of the loss, although the vehicle owner's policy contains a "prorata" clause.

*Maryland Cas. Co. v. American Family Ins. Group of Madison, Wis.*, 199 Kan. 373, 429 P.2d 931, 940 (1967) (quoting 76 A.L.R.2d 502, 505 (1961)). Indeed, it is precisely this majority rule that the legislature adopted as the public policy of this state when it enacted Indiana Code Section 27–8–9–7. Although as noted the facts of this case do not fall within the letter of the statute, and Milligan technically was not the "owner" of the Expedition but instead was a long-term lessor, we believe it would contravene both principles of contract interpretation and the intent of the legislature to require AAIC to provide primary, prorated coverage for this accident and ignore the clear language of its excess clause. Cincinnati's coverage for Milligan's accident is primary, and AAIC's is excess only after exhaustion of Cincinnati's policy limits.

### Conclusion

The trial court did not err in granting summary judgment in favor of AAIC and concluding that its coverage for Milligan's accident strictly is excess only after exhaustion of the limits of Milligan's personal automobile policy with Cincinnati. We affirm.

Affirmed.

NAJAM, J., and RILEY, J., concur.