**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**JOHN C. TRIMBLE**
**ROBERT M. BAKER IV**
Lewis Wagner, LLP
Indianapolis, Indiana

**GREGORY J. HAINES**
Rowe & Rowe
South Bend, Indiana

ATTORNEYS FOR APPELLEES:

**J. THOMAS VETNE**
**COLIN J. REILLY**
**BRIAN M. KUBICKI**
Jones Obenchain, LLP
South Bend, Indiana



FILED
Oct 01 2012, 9:13 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

ACUITY MUTUAL INSURANCE COMPANY, )
                                                  )
      Appellants,                          )
                                                  )
         vs.                               )     No. 71A05-1203-PL-101
                                                  )
AMERICAN FAMILY MUTUAL INSURANCE )
COMPANY, et al.,                        )
                                                  )
      Appellees.                          )

APPEAL FROM THE ST. JOSEPH CIRCUIT COURT
The Honorable David T. Ready, Special Judge
The Honorable Larry L. Ambler, Magistrate
Cause No. 71C01-0708-PL-206

**October 1, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

An Indiana motel owner had a van that he used for both personal and business purposes. He planned to use the van to transport family members to a baby shower in Chicago and then pick up some surplus TVs from his brother's motel and deliver them to his own motel in Warsaw. As the motel owner's nephew was driving the owner and his relatives to Chicago, the van crashed and the owner's young grandson was killed.

The motel owner and his wife and the child's parents filed a wrongful-death lawsuit against the nephew. Acuity Mutual Insurance Company ("Acuity"), which insured the motel owner's business corporation, was joined as a third-party plaintiff. Acuity sought a declaratory judgment against American Family Mutual Insurance Company ("American Family"), the nephew's auto and umbrella coverage insurer, arguing that the nephew was not entitled to coverage under Acuity's policy and that Acuity was not required to defend the nephew in the wrongful-death lawsuit. American Family defended the nephew and settled the lawsuit for $1,050,000.

American Family and the nephew and filed a counterclaim against Acuity, arguing that Acuity was the nephew's primary insurer and seeking to recover the costs of his defense. The parties in the wrongful-death lawsuit and the motel owner's corporation assigned whatever rights they had against Acuity to American Family. Acuity and American Family filed cross-motions for summary judgment on the issue of coverage. The trial court denied Acuity's motion and granted American Family's motion, concluding that the nephew was entitled to coverage under Acuity's policy and that Acuity was his primary insurer. The court

ordered Acuity to reimburse American Family $1,050,000 plus its defense costs in the wrongful-death lawsuit.

Acuity now appeals, claiming that the trial court erred in concluding that the nephew is entitled to coverage under its policy. We agree and therefore reverse and remand with instructions to enter summary judgment in Acuity's favor.

## Facts and Procedural History

The relevant facts are undisputed. Chhotabhai ("Charlie") Patel was the president of I-Shree, Inc., which owned motels in Warsaw and Goshen. Charlie's brother, Keesha, who owned a motel in Chicago, offered Charlie four or five surplus TVs, which Charlie decided to put in the Warsaw motel. As it happened, Keesha's daughter-in-law was going to have a baby shower in Chicago. Charlie owned a van, which he used for both personal and business purposes. He planned to take some relatives to the baby shower in the van and spend the night at Keesha's motel. The next day, he and his nephew, Vinod Patel (who was not an employee of I-Shree), would put Keesha's TVs in the van and deliver them to the Warsaw motel, and the other relatives would return home in separate vehicles. On the morning of February 5, 2006, Charlie and nine relatives met at his Goshen motel and boarded the van, which Vinod drove. En route to Chicago, the van slid off the road and crashed in St. Joseph County. Charlie's young grandson, Yavin Patel, was killed.

In August 2007, Charlie and his wife and Yavin's parents (collectively, "the Patels") filed a wrongful-death action against Vinod. Acuity, I-Shree's business liability insurer, was

3

joined as a third-party plaintiff.[1] Acuity filed a third-party complaint against the Patels, I-Shree, and Vinod, requesting a declaration that its policy did not provide coverage for either I-Shree or Vinod and that it was not obligated to defend them against the Patels' claims. Acuity also named as third-party defendants American Family, which provided personal auto and umbrella coverage for Vinod, and Travelers Insurance Company ("Travelers"), which provided personal auto coverage for Charlie. American Family defended Vinod against the Patels' claims.

In December 2008, Acuity filed a motion for summary judgment. Travelers settled with the Patels for $100,000, and American Family settled for $1,050,000. In January 2009, American Family filed its own summary judgment motion. American Family and Vinod filed a counterclaim against Acuity, alleging that Acuity was Vinod's primary insurer and seeking to recover the costs of his defense. American Family also filed an equitable subrogation action against Acuity that was later consolidated with the declaratory judgment action. Vinod and the Patels stipulated to the dismissal of the underlying action with prejudice and assigned whatever rights that they and I-Shree had against Acuity to American Family. Acuity filed a motion to dismiss American Family's equitable subrogation claim.

After a hearing on all pending motions, the trial court issued an order denying Acuity's motion to dismiss and motion for summary judgment and granting American Family's motion for summary judgment. The court found that Vinod was entitled to

---

[1] Acuity says that I-Shree was administratively dissolved on February 17, 2005, but does not argue that the dissolution affects the validity of its policy.

coverage under Acuity's policy and that Acuity was his primary insurer and entered judgment in favor of American Family as follows:

> a. Acuity Mutual Insurance Company, as Vinod's primary insurer, owes American Family Mutual Insurance Company One Million Fifty-Thousand Dollars ($1,050,000), with interest at the rate of 8% per annum as provided by law from January 14, 2009, plus the costs allowed a prevailing party; and
>
> b. Acuity Mutual Insurance Company, as Vinod's primary insurer, must reimburse American Family Mutual Insurance Company for the damages, costs, and expenses American Family incurred in defending the underlying wrongful-death claim. The amount of American Family's damages, costs, and expenses will be determined via further proceedings.

Appellant's App. at 25-26. Acuity now appeals the denial of its summary judgment motion and the granting of American Family's summary judgment motion.

**Discussion and Decision**

When reviewing the grant or denial of summary judgment, we use the same standard as the trial court. *Utica Mut. Ins. Co. v. Precedent Cos.*, 782 N.E.2d 470, 473 (Ind. Ct. App. 2003). "Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (citing Ind. Trial Rule 56(C)). "[Q]uestions involving the interpretation of an insurance policy are generally questions of law and, thus, are particularly well suited for summary disposition." *Id.* When ruling on cross-motions for summary judgment,

> the trial court must deal with each motion separately, construing the facts and inferences to be drawn therefrom in a light most favorable to the non-moving party. If the facts are undisputed, our task is to determine the law applicable to those facts, and whether the trial court correctly applied it.

5

*Id.* at 473-74 (citation omitted).

"The trial court's grant of summary judgment is clothed with a presumption of validity and the appellant bears the burden of demonstrating that the trial court erred." *Gagan v. Yast*, 966 N.E.2d 177, 184 (Ind. Ct. App. 2012), *trans. denied.* "Where, as here, the trial court makes findings in rendering summary judgment, those findings aid in appellate review, but are not binding on this court. Thus, findings that accompany a grant of summary judgment do not alter the nature of our review." *Id.* (citation omitted).[2]

The threshold issue here is whether I-Shree's business liability policy with Acuity provides coverage for Vinod as the driver of Charlie's van at the time of the accident. "Insurance policies are governed by the same rules of construction as other contracts." *Buckeye State Mut. Ins. Co. v. Carfield*, 914 N.E.2d 315, 318 (Ind. Ct. App. 2009), *trans. denied* (2010). "When interpreting an insurance policy, our goal is to ascertain and enforce the parties' intent as manifested in the insurance contract." *Id.* "We construe the policy and relevant endorsements from the perspective of an ordinary policyholder of average intelligence, and if reasonably intelligent people may interpret the policy's language differently, the policy is ambiguous." *Masten v. AMCO Ins. Co.*, 953 N.E.2d 566, 569 (Ind. Ct. App. 2011) (citation and quotation marks omitted), *trans. denied* (2012). "However, an

---

[2] Acuity notes that the trial court's order "is a verbatim copy of the proposed order tendered by American Family" and asserts that "[t]his court has expressly discouraged the practice of adopting proposed findings verbatim 'where many of the findings submitted by a party are argumentative.'" Appellant's Br. at 1 and n.1 (quoting *Scoleri v. Scoleri*, 766 N.E.2d 1211, 1214-15 n.6 (Ind. Ct. App. 2002)). Acuity has declined to specify which of the forty findings it deems objectionable, and we decline its implicit invitation to parse those findings for argumentativeness.

ambiguity does not exist merely because the parties proffer differing interpretations of the policy language." *Buckeye*, 914 N.E.2d at 318.

"If the language is clear and unambiguous, we give the language its plain and ordinary meaning." *Id*. "An insurance policy that is unambiguous must be enforced according to its terms, even those terms that limit an insurer's liability." *Haag v. Castro*, 959 N.E.2d 819, 824 (Ind. 2012) (citation and quotation marks omitted). "[T]he power to interpret contracts does not extend to changing their terms, and we will not give insurance policies an unreasonable construction to provide added coverage." *Gregg v. Cooper*, 812 N.E.2d 210, 215 (Ind. Ct. App. 2004), *trans. denied*.[3]

Acuity's policy reads in pertinent part as follows:

**HIRED AUTO AND NONOWNED AUTO LIABILITY**

This endorsement modifies insurance provided under the following:

BIS-PAK BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

    **1.**    Insurance is provided as stated below:

---

[3] Acuity argues, "because this case involves a dispute between Acuity and two parties who were not a party to the insurance policy and paid no insurance premiums – i.e., Vinod and his insurer, American Family – this Court should assess the contract from a neutral stance." Appellant's Br. at 11 (citing *Harden v. Monroe Guar. Ins. Co.*, 626 N.E.2d 814 (Ind. Ct. App. 1993), *trans. denied* (1994)). American Family responds,

> This isn't just a dispute between American Family and Vinod on one side and Acuity on another, as Acuity would have us believe. I-Shree, Charlie, and the rest of the family assigned their rights against Acuity to American Family, so this is very much a dispute between Acuity and its insured, I-Shree, among others. Besides, when all other rules of construction fail, Indiana's courts employ the cardinal rule that an ambiguous contract will be construed against its drafter—in this case, Acuity.

Appellees' Amended Br. at 11 n.6 (citing *Bishop v. Sanders*, 624 N.E.2d 64, 67-68 (Ind. Ct. App. 1993), *trans. denied* (1994)). Because Acuity's policy is unambiguous, we need not employ that rule.

**a.**     **Hired Auto Liability**

The insurance provided under the Liability and Medical Expenses Coverages Section, paragraph 1, Business Liability, applies to bodily injury or property damage arising out of the maintenance or use of a hired auto by you or your employees in the course of your business.

**b.**     **Nonowned Auto Liability**

The insurance provided under the Liability and Medical Expenses Coverages Section, paragraph 1, Business Liability, applies to bodily injury or property damage arising out of the use of any nonowned auto in your business.

**2.**     For insurance provided by this endorsement only:

….

**b.**     Who Is an Insured is replaced by the following:

Each of the following is an insured under this endorsement to the extent set forth:

(1)     You for any covered auto.

(2)     Anyone else while using with your permission a covered auto you lease, hire, rent or borrow except:

(a)     The owner or anyone else from whom you lease, hire, rent or borrow a covered auto. This exception does not apply if the covered auto is a trailer connected to a covered auto you own.

(b)     Your employee if the covered auto is owned by that employee or a member of his or her household.

….

8

**3.** The following additional definitions apply:

….

**b.** "Hired Auto" means only those autos you lease, hire, rent or borrow. This does not include any auto you lease, hire, rent or borrow:

(1) From any of your employees, partners (if you are a partnership), members (if you are a limited liability company) or members of their households; or

(2) If the lease or rental agreement involving that auto is for a term of longer than 30 consecutive days.

**c.** "Nonowned Auto" means only those autos you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes autos owned by your employees, partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business.

Appellant's App. at 400-01 (italicized emphases omitted).

The parties' arguments regarding policy interpretation and coverage are extensive, but three undisputed points help to narrow the scope of our analysis considerably.[4] The first point is that only someone defined as an "insured" under paragraph 2(b) of the endorsement is entitled to coverage under the policy. Appellant's Br. at 12; Appellee's Amended Br. at 22. The terms of that coverage are outlined in paragraph 1 of the endorsement. The second

---

[4] The parties' primary dispute is whether the van was being used in the course of I-Shree's business when it crashed. Given our handling of the coverage question, we need not resolve that dispute.

9

point is that I-Shree is the "you" referred to in paragraph 2(b)(1). *See* Appellant's App. at 372 (policy definitions: "Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy."); *id.* at 345 (showing I-Shree as the "First" (and only) "Named Insured"). And the third point is that I-Shree did not lease, hire, rent, or borrow Charlie's van. Appellee's Amended Br. at 12.

Based on the foregoing, we may confine our analysis to whether Vinod is an insured by virtue of whether he may be considered "anyone else" (that is, anyone other than I-Shree) who used with I-Shree's permission a "covered auto" that I-Shree leased, hired, rented, or borrowed. As we just mentioned, it is undisputed that I-Shree did not lease, hire, rent, or borrow Charlie's van. Consequently, even if we assume that the van is a "covered auto," which the policy does not specifically define, the policy unambiguously provides that Vinod does not qualify as an insured and therefore is not entitled to coverage.

American Family asserts that the policy's failure to define "covered auto" creates an ambiguity that must be construed in favor of coverage in this case. We disagree. "There is no rule of construction that every term in an insurance contract must be defined, and the mere fact that a term is not defined does not render it ambiguous." *Harden v. Monroe Guar. Ins. Co.*, 626 N.E.2d 814, 817 (Ind. Ct. App. 1993), *trans. denied* (1994). American Family attempts to create an ambiguity where none exists. A careful reading of the policy indicates that "covered auto" means different things in different situations, which does not render the policy meaningless or illusory, as American Family suggests. In the case of a named insured,

10

a "covered auto" may be either a "hired auto" or a "nonowned auto" as defined in paragraph 3 of the endorsement and subject to the coverage terms outlined in paragraph 1 of the endorsement. In the case of "anyone else," the "covered auto" must be a "hired auto." Because Charlie's van was not a "hired auto," Vinod is not entitled to coverage under the policy.

> It is black-letter law that
>
> [i]nsurance companies are free to limit their liability in a manner not inconsistent with public policy as reflected by case or statutory law. If a plainly expressed exception, exclusion or limitation in an insurance policy is not contrary to public policy, it is entitled to construction and enforcement as expressed.

*Allstate Ins. Co. v. Boles*, 481 N.E.2d 1096, 1098 (Ind. 1985) (citation omitted). American Family does not contend that the limitation at issue is contrary to public policy, and we may not rewrite an unambiguous policy to provide coverage where none exists. *Sell v. United Farm Bur. Family Life Ins. Co.*, 647 N.E.2d 1129, 1131-32 (Ind. Ct. App. 1995), *trans. denied*. Accordingly, we reverse and remand with instructions to enter summary judgment in favor of Acuity.[5]

Reversed and remanded.

RILEY, J., and BAILEY, J., concur.

---

[5] Because we hold that Vinod is not entitled to coverage under Acuity's policy, we need not address whether Acuity or American Family is his primary insurer. Given that American Family's policy was never incorporated into the record, such would be an impossible task in any event, and it is disingenuous for American Family to suggest otherwise. *See Cincinnati Ins. Co. v. Am. Alternative Ins. Corp.*, 866 N.E.2d 326, 332 (Ind. Ct. App. 2007) ("First and foremost, we should make every attempt to discern the intent of the parties who drafted 'other insurance' clauses by reference to the language of the policies."), *trans. denied*.